UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANDREW FERNANDES,

            Plaintiff,

    v.

TW TELECOM HOLDINGS, INC.,

            Defendant[*].

No. 2:15-cv-01976-TLN-CKD

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Defendant TW Telecom Holdings, Inc. ("Defendant") seeks dismissal of Plaintiff Andrew Fernandes's ("Plaintiff's") Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff's Complaint alleges the following causes of action: 1) violation of California Labor Code section 1050; 2) intentional and negligent interference with prospective economic relations; 3) fraud and negligent misrepresentation; and 4) promissory estoppel. (Pl.'s V. Compl. for Damages ("Compl.") Ex. A, ECF No. 1.) Defendant argues that the claims included in Plaintiff's Complaint are barred by the doctrine of res judicata. Specifically, Defendant contends: "Plaintiff has already had his day in court against [Defendant] – he is not entitled two – and this Court should therefore put this controversy to rest by dismissing Plaintiff's Complaint without leave to amend." (Def.'s Mot. to Dismiss ("Mot") 1:16-18, ECF No. 10.) Alternatively, Defendant argues that "Plaintiff's Complaint should be dismissed because each cause of action fails to state a claim." (Id. 1:18-19.) For the reasons stated below, Plaintiff is precluded from alleging claims based upon Defendant's failure to re-hire Plaintiff; Defendant's motion to dismiss is GRANTED as to the remainder of Plaintiff's claims. Plaintiff is given LEAVE TO AMEND the deficiencies

---

[*] The caption has been amended according to the <u>Dismissal of Doe Defendants</u> portion of the Status (Pretrial Scheduling) Order, ECF No. 16.

1    in his Complaint.

2    **I. FACTUAL ALLEGATIONS**

3    The following factual allegations concern the decision below.

4    "On or about October 19, 2009, Plaintiff began his employment with [Defendant] . . . as a

5    Network Technician III." (Compl. ¶ 7.) "From about December 30, 2009, to until early 2012,

6    Plaintiff reported a series of safety and compliance issues at the sites he was assigned to [inspect]

7    and to sites adjacent to his assigned region." (Id. ¶ 9.) "Although [Plaintiff's] manager told him

8    to document these safety violations, little or nothing was done to correct them." (Id. ¶ 10.)

9    "Plaintiff met with Steve Frenette ("Frenette"), [Defendant's] Manager of Risk

10    Management. . . . During this meeting, Plaintiff advised Frenette that nothing was being done to

11    address the serious safety violations. Plaintiff also advised Frenette that he was being retaliated

12    against for having reported them in the first place. Frenette did nothing substantive to address the

13    safety concerns and nothing to address Plaintiff's report of retaliation." (Id. ¶ 11.)

14    "[I]n June 2012, Plaintiff's manager requested that Plaintiff return his copy of a master

15    key, which opened all of the rooms at each [s]ite." (Id. ¶ 13.)

16    "On or about July 31, 2012, Kevin O'Connor[1] ("O'Connor") requested a meeting with

17    Plaintiff. . . . After this meeting, but before Plaintiff's termination, [Defendant] encouraged

18    Plaintiff to apply for jobs internal to the company. Plaintiff applied for many jobs with

19    [Defendant], but received only a handful of interviews. Plaintiff never received a job offer from

20    any of the [Defendant's] jobs. In fact, Plaintiff never heard one way or the other about most of

21    the jobs. Because Plaintiff was well qualified for these jobs and because he had received

22    commendation and encouragement from O'Connor, among others, he did not understand why he

23    was being excluded." (Id. ¶ 14.)

24    "Sometime in or about August 2012, O'Connor and others from [Defendant] caused a

25    'termination checklist' to be placed in Plaintiff's file." (Id. ¶ 15.) The aforementioned "checklist

26    stated . . . that Plaintiff was not eligible for rehire because of unprofessional conduct, which

27    occurred during his termination." (Id.) "Plaintiff was never informed of this checklist and never

28

---

[1] The Court infers Mr. O'Connor exercises a management or supervisory role with Defendant.

1  informed of the reasons supporting a conclusion that he was guilty of unprofessional conduct.

2  Plaintiff never engaged in unprofessional conduct during his termination. On or about August 15,

3  2012, Plaintiff was terminated, with the explanation that his position was being eliminated.

4  (Id.) "Thereafter, Plaintiff applied for many jobs in the telecommunications industry . . . " but

5  was unsuccessful in finding subsequent employment at "any other network provider." (Id. ¶ 16;

6  p. 2:9.)

7  **II. LEGAL STANDARD**

8  "'To survive a motion to dismiss, a complaint must contain sufficient factual matter,

9  accepted as true, to state a claim to relief that is plausible on its face.'" Caviness v. Horizon

10  Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S.

11  662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that

12  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

13  alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

14  "For purposes of a motion to dismiss, we accept all well-pleaded allegations of material fact as

15  true and construe them in the light most favorable to the nonmoving party." Sateriale v. R.J.

16  Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012). However, the court does "not accept

17  *legal conclusions* in the complaint as true, even if cast in the form of factual allegations." Lacano

18  Invs., LLC v. Balash, 765 F.3d 1068, 1071 (9th Cir. 2014) (internal quotation marks omitted).

19  **III. DISCUSSION**

20  A. Consideration of Documents Beyond the Pleadings

21  Defendant requests that the Court take judicial notice of Exhibits A up to and including I

22  which consist of court filings and court orders in the prior related case, Fernandes v. TW Telecom

23  Holdings, Inc., Case No. 2:13-cv-2221-GEB-CKD ("Prior Action"), as well as an email

24  communication from Plaintiff's prior counsel.[2]  (Def.'s Req. for Judicial Notice ("Def.'s RJN"),

---

25  [2]  Specifically Defendant requests that the Court take judicial notice of the following documents:

26  1. Plaintiff['s] . . . February 27, 2015 Memorandum of Points and Authorities in Support of Motion to Amend the Complaint [(ECF No. 22-1)], filed in the matter . . . [of] Andrew Fernandes v. TW Telecom Holdings, Inc., . . . . Case No. 2:13-cv-02221-GEB-CKD (the "Prior Action") and attached to [Defendant's] request for judicial notice as Exhibit A.

27  2. Plaintiff['s] . . . Declaration in Support of Motion to Amend the Complaint [(ECF No. 22-3)], filed in the

28

ECF No. 11.)

Generally, a federal court "'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"  United States v. Corinthian Colls., 655 F.3d 984, 998 (9th Cir. 2011) (quoting Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001)).  However, well-pleaded allegations of material facts "may [be] augment[ed]" by "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011); see also United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("[A federal] court may . . . consider certain materials [including] documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.")

Exhibits A-F, H, and I are prior court filings.  "'[A] court may take judicial notice of its own records.'"  Bovarie v. Giurbino, 421 F.Supp.2d 1309, 1313 (S.D. Cal. 2006) (quoting United States v. Author Servs., Inc., 804 F.2d 1520, 1522 (9th Cir. 1986) overruled on other grounds by United States v. Jose, 131 F.3d 1325 (9th Cir. 1997)).  Accordingly, judicial notice is taken of Exhibits A-F, H, and I.

Exhibit G is an email from Plaintiff's counsel in the Prior Action.  Defendant contends

---

Prior Action and attached to [Defendant's] request for judicial notice as Exhibit B.

3. Plaintiff['s] . . . Proposed Amended Complaint attached as an exhibit to [ECF] [N]o. 22-2, filed in the Prior Action and attached to [Defendant's] request for judicial notice as Exhibit C.

4.Plaintiff['] s . . . Reply Memorandum of Points and Authorities in Support of his Motion to Amend the Complaint [(ECF No. 25)], filed in the Prior Action and attached to [Defendant's] request for judicial notice as Exhibit D.

5. [The] May 26, 2015 Order granting Defendant's motion for summary judgment in the Prior  Action [(ECF No. 31)], attached to [Defendant's] request for judicial notice as Exhibit E.

6. [The] May 26, 2015 Judgment in favor of Defendant in the Prior Action [(ECF No. 32)], attached to [Defendant's] request for judicial notice as Exhibit F.

7. [The] February 11, 2015 email from Robert L. Boucher, Plaintiff['] s . . . counsel in the Prior Action, attached to [Defendant's] request for judicial notice as Exhibit G.

8. Plaintiff['] s . . . July 31, 2013 Verified Complaint for Damages [(ECF No. 1)], filed in the Prior Action[] and attached to [Defendant's] request for judicial notice as Exhibit H.

9. [The] April 23, 2015 Order denying Plaintiff Andrew Fernandes' Motion to Amend his Complaint [(ECF No. 30)], filed in the Prior Action and attached to [Defendant's] request for judicial notice as Exhibit I." (Def.'s RJN 3:5-4:6.)

4

that "[p]rior courts have . . . taken judicial notice of emails, letters, and other forms of communication whose authenticity is not disputed." (Def.'s RJN 2:22-24.) Federal Rule of Evidence 201(b) permits a court to take judicial notice of matters that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Plaintiff does not oppose Defendant's request for judicial notice of Exhibit G and therefore does not dispute the accuracy or relevancy of this email. Therefore, judicial notice is taken of Exhibit G. See Perkins v. Linkedin Corp., 53 F.Supp.3d 1222, 1242 (N.D. Cal. 2014) (taking judicial notice of an uncontested screenshot of an email).

    B.  Res Judicata (Claim Preclusion)

    Defendant argues that "the doctrine of res judicata applies" to the claims alleged in Plaintiff's Complaint. (Mot. 1:10.) "The doctrine of res judicata provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action . . . ." Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1051 (9th Cir. 2005) (internal quotations omitted).

        *i. Prior Related Action*

    Plaintiff filed his Complaint in the Prior Action ("Original Complaint") on July 31, 2013. (Def.'s RJN Ex. H pp. 79-91.) The Original Complaint alleged causes of action for violation of Labor Code § 1102.5(c); violation of Labor Code §§ 6310, 6403, and 6404; and wrongful termination in violation of public policy. (Id.) After the discovery cut-off in the Prior Action, Plaintiff filed a Motion for Leave to Amend the Original Complaint ("Motion for Leave to Amend") based on a "termination checklist" produced in discovery. (Id. Ex. A, Ex. C.) In Plaintiff's Motion for Leave to Amend, Plaintiff sought to add four claims against Defendant: 1) violation of California Labor Code section 1050; 2) intentional and negligent interference with prospective economic relations; 3) fraud and negligent misrepresentation; and 4) promissory estoppel. (Id. Ex. A pp. 14-15.) The Court denied Plaintiff's Motion for Leave to Amend, finding that "Plaintiff has not adequately explained why [he] waited [eleven] months after receiving the [termination checklist] before filing the Motion for Leave to Amend." (Id. Ex. I 5:23-27.) On March 13, 2015, Defendant filed a motion for summary adjudication of the causes

5

1    of action alleged in the Original Complaint.  The Court granted Defendant's motion for summary

2    judgment.  (Id. Ex. E.)

3                    *ii. Identity of Claims*

4            Res judicata applies when there is "(1) an identity of claims, (2) a final judgment on the

5    merits, and (3) privity between parties."  United States v. Liquidators of European Fed. Credit

6    Bank, 630 F.3d 1139, 1150 (9th Cir. 2011) (quoting Tahoe–Sierra Pres. Council, Inc. v. Tahoe

7    Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003)).  A final judgment was entered in

8    the Prior Action when the Court granted Defendant's motion for summary judgment.  See Hells

9    Canyon Pres. Council v. U.S. Forest Serv., 403 F.3d 683, 686 (9th Cir. 2005) ("Final judgment on

10   the merits is synonymous with dismissal with prejudice.")  Further, the parties are identical in

11   both the current and Prior Action.  Therefore, the only element in need of analysis is the

12   requirement that there be an identity of claims.

13           The Ninth Circuit applies a four factor test to determine whether there is an identity of

14   claims:

15                   (1) [W]hether rights or interests established in the prior judgment
                     would be destroyed or impaired by prosecution of the second
16                   action; (2) whether substantially the same evidence is presented in
                     the two actions; (3) whether the two suits involve infringement of
17                   the same right; and (4) whether the two suits arise out of the same
                     transactional nucleus of facts.
18
     Headwaters Inc., 399 F.3d at 1052 (quoting Costantini v. Trans World Airlines, 681 F.2d 1199,
19
     1201–02 (9th Cir. 1982) (internal quotations omitted)).
20
             Whether the claims share the same transactional nucleus of facts is the "most important"
21
     factor.  Id.; see Turtle Island Restoration Network v. U.S. Dep't of State, 673 F.3d 914, 918 (9th
22
     Cir. 2012) (evaluating the fourth factor first, where the claims involve different legal challenges).
23
     Two claims share a transactional nucleus of facts when "they are related to the same set of facts
24
     and could have been conveniently tried together."  Mpoyo v. Litton Electro-Optical Sys., 430
25
     F.3d 985, 987 (9th Cir. 2005).  The scope of the prior action is construed narrowly when
26
     determining the "nucleus of facts" for purposes of claim preclusion.  Cent. Delta Water Agency v.
27
     United States, 306 F.3d 938, 953 (9th Cir. 2002) (holding that action on release of water was not
28

1   precluded by earlier action on release of water, even though it was the same harm, because it was

2   a different governmental plan.)

3           Defendant contends:

4           Although Plaintiff asserts different claims in [the Original
        Complaint] and [the Complaint in the Current Action ("Current

5           Complaint")], the Current Action is nevertheless barred by the
        doctrine of res judicata because the facts on which it is based arise

6           out of the same "transactional nucleus of facts": Plaintiff's
        employment with [Defendant]; Plaintiff's termination therefrom;

7           and Plaintiff's ability to obtain subsequent employment. Such a
        nucleus of facts tells a cohesive story about Plaintiff's employment

8           ideal for a single trial.

9   (Mot. 5:18-23.)

10          Defendant further argues:

11          [T]he only "new" allegation in the Current Action – that
        [Defendant] interfered with Plaintiff's efforts to obtain employment

12          with another company – is not so "new." Plaintiff's Motion for
        Leave to Amend [the Original Complaint] asked this Court to allow

13          Plaintiff to add the precise claims asserted in the Current Action.

14          . . . .

15          This Court denied Plaintiff's Motion for Leave to Amend in the
        Prior Action, finding that "Plaintiff has not 'adequately explained

16          why [he] waited [eleven] months after receiving the [termination
        checklist] before filing the Motion for Leave to Amend.'" [(Ex. I at

17          5:23-27.)] But the fact that Plaintiff was not previously permitted to
        bring the claims now asserted in the Current Action does not

18          preclude the application of res judicata.

19  (Mot. 5:24-27; 6:23-27.)

20          Plaintiff counters that "Plaintiff's new claims . . . arise from a different time period, a

21  different set of facts, and different law."  (Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n")) 7:14-

22  16.)  Specifically, Plaintiff argues that while the "Original Complaint covered Defendant's

23  retaliation against Plaintiff *during his employment*[, t]he [Current] Complaint covers Defendant's

24  actions to black-ball Plaintiff from working in the industry."  (Id. 7:16-18.)

25          In the instant case, Plaintiff's claims are based on Defendant's unlawful activities *after*

26  Plaintiff's termination.  In ruling on Defendant's motion for summary judgment of the Original

27  Complaint the Court addressed Plaintiff's assertions that Defendant refused to rehire Plaintiff in

28  retaliation for his safety complaints.  (Def.'s RJN Ex. E 13:26-15:15.)  Plaintiff makes a nearly

1    identical argument as to Defendant's refusal to rehire in his current Complaint.  Accordingly,

2    Plaintiff is precluded from advancing any claims based upon Defendant's refusal to rehire

3    Plaintiff.  However, the Court did not previously address Plaintiff's claims related to Defendant's

4    alleged interference with Plaintiff's third-party job prospects.

5           Defendant argues that the Ninth Circuit's decision in Mpoyo, 430 F.3d 985, dictates that

6    "this Court should apply the doctrine of res judicata to bar [P]laintiff from asserting [the claims

7    Plaintiff attempted to add to his Original Complaint in his Motion for Leave to Amend], . . . to

8    achieve the important policies . . . of relieving the parties of the costs and vexation of multiple

9    lawsuits, conserving judicial resources and encouraging reliance on adjudication by preventing

10   inconsistent decisions."  (Mot. 7:14-17.)  However, the policy concerns articulated in Mpoyo are

11   not present in the instant case.  Unlike in Mpoyo, Plaintiff's claims focus on a distinct period of

12   time and different facts.  Therefore, Plaintiff is not precluded from advancing claims as to

13   Defendant's alleged interference with Plaintiff's prospective employment with third-party

14   employers.  With this underlying principle, the Court will address the sufficiency of Plaintiff's

15   allegations as to each of Plaintiff's specific causes of action.

16                            *iii. Failure to State a Claim*

17                            1.   Violation of Labor Code Section 1050

18          California Labor Code section 1050 ("§ 1050") prescribes: "Any person, or agent or

19   officer thereof, who, after having discharged an employee from the service of such person or after

20   an employee has voluntarily left such service, by any misrepresentation prevents or attempts to

21   prevent the former employee from obtaining employment, is guilty of a misdemeanor."

22   Cal. Labor Code § 1050.

23          Defendant argues that "Plaintiff does not allege facts to support a claim under [§ 1050],

24   and his allegations amount to a concession that this claim is based on pure speculation and

25   conjecture."  (Mot. 13:8-10.)  Defendant also contends that "[b]y Plaintiff's own account, he has

26   no idea what representations or misrepresentations were made, if any . . . [n]or does Plaintiff

27   know whether [Defendant] prevented or attempted to prevent him from obtaining employment."

28   (Id. 13:18-23.)

Plaintiff counters: "Plaintiff has laid out allegations sufficient to put Defendant on notice of each of the elements for violation of [§ 1050]." (Opp'n 18:2-3.)  Specifically, Plaintiff alleges: "On or about October 19, 2009, Plaintiff began his employment with [Defendant]" and "[o]n or about August 15, 2012, Plaintiff was terminated." (Compl. ¶¶ 7, 15.)  Plaintiff further alleges that "Plaintiff believes that the reason he was excluded from jobs with [a third-party employer] is that [a Defendant employee], relying on the termination checklist, told [the third-party employer] that Plaintiff was ineligible for rehire[;]" (Id. ¶ 16.)  "Plaintiff never heard one way or the other about this or other jobs he applied for with [the third-party employer.]" (Id. ¶ 16.)

As discussed above, the doctrine of res judicata precludes Plaintiff from advancing any claim that Defendant violated § 1050 in refusing to rehire Plaintiff.  See supra Section III.B.2.  However, Plaintiff is not precluded from advancing his claim that Defendant violated § 1050 in making misrepresentations to third-party employers.  Plaintiff's speculative allegations based solely upon Plaintiff's mere "beliefs" and Plaintiff's ultimate inability to obtain alternative employment, fail to sufficiently allege a claim under § 1050.  Accordingly, Defendant's motion to dismiss Plaintiff's § 1050 claim is GRANTED.  However, Defendant has failed to demonstrate that amendment would necessarily be futile; therefore Plaintiff is granted leave to amend his § 1050 claim.

### 2.   Intentional and Negligent Interference with Prospective Economic Relations

#### a.   Intentional Interference

Defendant argues that Plaintiff has failed to allege facts sufficient to meet the required elements of a claim of intentional interference with prospective economic relations ("intentional interference"). (See Mot. 10:24-12:9.)  Defendant contends that "Plaintiff's allegation [that he had an economic relationship with a prospective employer] is nothing more than insufficient hypothesis . . . ." (Id. 11:13-17.)  Defendant further argues that "Plaintiff . . . fails to sufficiently allege facts showing 'economic harm to . . . [P]laintiff proximately caused by the acts of the defendant.'" (Id. 11:18-19.)

Plaintiff counters: "Plaintiff has laid out allegations sufficient to put Defendant on notice of each of the elements for violation of the intentional . . . interference with prospective business

1   advantage . . . ." (Opp'n 16:16-18.)

2       In California,

3       [t]he elements of the tort of [intentional interference] are: (1) an
        economic relationship between the plaintiff and some third person
4       containing the probability of future economic benefit to the
        plaintiff; (2) knowledge by the defendant of the existence of the
5       relationship; (3) intentional acts on the part of the defendant
        designed to disrupt the relationship; (4) actual disruption of the
6       relationship; and (5) damages to the plaintiff proximately caused by
        the acts of the defendant.
7

8   Blank v. Kirwan, 39 Cal. 3d 311, 330 (1985).  The ability to bring a claim for intentional

9   interference "protects the [Plaintiff's] expectation that the [alleged economic] relationship

10  eventually will yield the desired benefit, not necessarily the more speculative expectation that a

11  potentially beneficial relationship will eventually arise."  Westside Ctr. Assocs. v. Safeway Stores

12  23, Inc., 42 Cal. App. 4th 507, 524 (1996).

13      Plaintiff alleges that "Plaintiff had an economic relationship with prospective employers –

14  both [Defendant] and Level 3, among others."  (Compl. ¶ 27.)  However, "[Plaintiff] fails to

15  provide any factual basis upon which to determine whether [Plaintiff] was likely to have actually

16  received the expected benefit[; w]ithout an existing relationship with an identifiable [third-party

17  employer], [Plaintiff's] expectation of . . . future [employment] was 'at most a hope for an

18  economic relationship and a desire for future benefit.'"  Westside Ctr. Associates, 42 Cal. App.

19  4th at 527 (quoting Blank, 39 Cal. 3d at 331).  Therefore, Plaintiff's speculative assertions fail to

20  plausibly allege a claim for intentional interference.  Accordingly, Defendant's motion to dismiss

21  Plaintiff's intentional interference claim is GRANTED.  However, Defendant has not

22  demonstrated that amendment would be futile and Plaintiff is thus granted leave to amend his

23  intentional interference claim.

24              b.  Negligent Interference

25      Additionally, Defendant argues that Plaintiff fails to establish the requisite elements of a

26  negligent interference with prospective economic advantage ("negligent interference") claim.

27  (See Mot. 12:10-28.)  Specifically, Defendant contends:

28      Plaintiff's negligent interference claim fails because (1) Plaintiff's

10

1    |    economic relationship with a third[-]party is speculative, (2)
2    |    Plaintiff's damages are remote, contingent, and merely possible, (3)
     |    and other than conclusory statements, Plaintiff fails to allege that
3    |    the relationship was actually interfered with or disrupted. Plaintiff's
     |    negligence claim also fails because Plaintiff does not identify any
4    |    special duty owed by [Defendant] to Plaintiff.

(Id. 12:23-28.)

Plaintiff rejoins that "Plaintiff has laid out allegations sufficient to put Defendant on notice of each of the elements . . . of . . . negligent interference . . . ." (Opp'n 16:16-18.) Specifically, Plaintiff alleges that "[the termination] checklist was . . . carelessly, recklessly, negligently, or intentionally placed in Plaintiff's file to cause Plaintiff's inability to obtain work in his field." (Compl. ¶ 27.)

Plaintiff's allegations consist of mere speculation as to Defendant's role in Plaintiff's inability to find future telecommunications employment. Therefore, Defendant's motion to dismiss Plaintiff's negligent interference claim is GRANTED. However, Defendant has not demonstrated that amendment would be futile and Plaintiff is thus granted leave to amend his negligent interference claim.

### 3.   Fraud and Negligent Misrepresentation

Defendant contends that Plaintiff's "allegations are insufficient to state a cause of action in fraud or misrepresentation because they lack the 'who, what, when, where and how' of the [alleged] fraud, [which are] elements that the Ninth Circuit requires." (Mot. 10:12-14.) Further, Defendant argues that Plaintiff's fraud and negligent misrepresentation claims "do not include any facts to show [Defendant's] 'knowledge of the falsity of the misrepresentation[]' . . . [n]or do[es] Plaintiff[] . . . set forth the requisite elements of how Plaintiff justifiably relied on [Defendant's] false statement . . . [nor does Plaintiff] offer any facts to establish that [Defendant] intended to induce Plaintiff's reliance." (Id. 10:17-21.)

Plaintiff counters: "Plaintiff has laid out allegations sufficient to put Defendant on notice of each of the elements of fraud based on misrepresentation . . . ." (Opp'n 14:16-17.)

The elements of a fraud claim under California law are: "(1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation,

1   i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5)

2   resulting damages." <u>Cadlo v. Owens-Ill., Inc.</u>, 125 Cal. App. 4th 513, 519 (2004), <u>as modified</u>

3   (Dec. 30, 2004) (quoting <u>Small v. Fritz Cos., Inc.</u>, 30 Cal. 4th 167, 173 (2003)).  Further, "[i]t is

4   well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation

5   must meet Rule 9(b)'s particularity requirements." <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F.

6   Supp. 2d 1101, 1141 (C.D. Cal. 2003).  Plaintiff must therefore specifically allege the "'time,

7   place, and specific content of the false representations as well as the identities of the parties to the

8   misrepresentations.'" <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (quoting

9   <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1066 (9th Cir. 2004)).

10       Plaintiff is precluded by the doctrine of res judicata from asserting any claim based on

11   Defendant's refusal to rehire Plaintiff.  <u>See</u> <u>supra</u> Section III.B.2.  Because the only specific

12   misrepresentation that Plaintiff alleges relates to Defendant's failure to rehire Plaintiff,[3] Plaintiff

13   fails to allege a plausible claim for fraud and negligent misrepresentation.  Therefore, Defendant's

14   motion to dismiss Plaintiff's fraud and negligent misrepresentation claim is GRANTED.

15   However, Defendant has failed to demonstrate that amendment would be futile and Plaintiff is

16   thus granted leave to amend his fraud and negligent misrepresentation claim.

17            4.  Promissory Estoppel

18       Plaintiff points to a number of allegations in support of his promissory estoppel claim.

19   However, each allegation relates to Defendant's alleged promise and subsequent failure to rehire

20   Plaintiff.  For the reasons discussed above, Plaintiff is precluded from alleging claims based on

21   Defendant's failure to rehire Plaintiff.  <u>See</u> <u>supra</u> Section III.B.2.  Therefore, Defendant's Motion

22   to Dismiss Plaintiff's promissory estoppel claim is GRANTED.  However, Defendant has failed

23   to demonstrate that amendment would be futile and Plaintiff is thus granted leave to amend his

24   promissory estoppel claim.

25   **IV.  CONCLUSION**

26       For the stated reasons, Defendant's Motion to Dismiss is GRANTED WITH LEAVE TO

27

28

[3] Specifically Plaintiff alleges: "Defendant told Plaintiff that . . . he would be seriously considered for any job for which he applied and for which he was qualified[; y]et, Defendant falsely concealed the fact that he was ineligible for rehire." (Compl. ¶ 32.)

12

1  AMEND.  Plaintiff is granted fourteen (14) days from the date on which this order is filed to file

2  an amended complaint addressing the deficiencies in the claims for which Plaintiff has been given

3  leave to amend.  Plaintiff is warned that this action may be dismissed with prejudice under

4  Federal Rule of Civil Procedure 41(b) if Plaintiff fails to file an amended complaint within the

5  prescribed time period.

6

7  Dated: February 22, 2016

8

9

                           Troy L. Nunley

10                          United States District Judge

13